IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARRYL A. BROWN, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 3:05-cv-471-DGW |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on the Petition for Review of the Commissioner's Decision Denying Benefits (entitled "Plaintiff's Brief") filed by the Plaintiff, Darryl A. Brown, on October 17, 2005 (Doc. 13). For the reasons set forth below, the plaintiff's petition is hereby **GRANTED**, the Commissioner's decision is **REVERSED**, and this matter is **REMANDED** to the agency for further review consistent with this Order.

### BACKGROUND

**Administrative Proceedings**

The plaintiff, Darryl A. Brown, applied for Disability Insurance Benefits and Supplemental Security Income on November 2, 2002 (Tr. 53-56), alleging an onset date of October 22, 2002 (Tr. 54). The state agency denied his application initially and on reconsideration (Tr. 30-34, 36-39). Following an administrative hearing on September 2, 2004, an ALJ denied his application on December 10, 2004 (Tr. 13-23). On May 20, 2005, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner (Tr. 4-8). Pursuant to 42 U.S.C. § 405(g), the plaintiff commenced a civil action for judicial review of the ALJ's decision.

**Statement of Facts**

The plaintiff was 49 years old at the time of the agency's final decision in this case (Tr. 54). He completed the eleventh grade in school and has worked as a construction laborer, a corrugator at a cardboard manufacturing company, and an assemblyman in a boat factory (Tr. 77, 85, 282).

**Medical Evidence**

The plaintiff first injured his neck and back in an accident at work in September of 1998 (Tr. 187). Dr. Scott Gibbs, a neurosurgeon, treated the plaintiff on November 4, 1998 with prescriptions of Relafen and Flexeril, and asked him to complete a course of physical therapy (Tr. 190). On December 9, 1998, Dr. Gibbs reported that although the plaintiff's neck pain had disappeared through conservative treatment, the plaintiff still complained of back pain at that time (Tr. 184). Additionally, Dr. Gibbs interpreted the plaintiff's November 4th MRI, diagnosing a right foraminal disc bulge or herniation and neuroforaminal narrowing (Tr. 184). In October of 2001, the plaintiff developed back and left leg pain, which resulted in him undergoing a discectomy of the L5-S1 disc in December of 2001 (Tr. 209). He ultimately reported relief of his leg pain and returned to work (Tr. 209). Later, on October 23, 2002, the plaintiff reported very severe back pain and pain within his lower left extremity after pitching hay and cutting grass the day before (Tr. 209).

In March of 2003, the plaintiff saw Dr. William Hays, who stated that the plaintiff was unable to return to work for an indefinite time due to a herniated disc (Tr. 156). Three days later, on March 6, 2003, Dr. Raymond Leung examined the plaintiff and observed that the plaintiff had a slow gait with a mild limp, an inability to heel or toe walk, and an ability to squat 1/4 of the way down (Tr. 137). Dr. Leung also observed that the plaintiff's lumbar forward

flexion was only 30 degrees (90 is normal), his bilateral lateral flexion was 20 degrees (25 is normal), and he had positive (reduced) bilateral straight leg raising (Tr. 137, 140). Dr. Leung further observed normal motion of the plaintiff's extremities, normal cervical spine, normal sensation and reflexes, no muscle atrophy, and no lumbar muscle spasms (Tr. 137, 139-40).

Dr. Gibbs examined the plaintiff on April 1, 2003 and found no strength deficits in the lower extremities, no atrophy, normal sensation in the lower extremities, and normal reflexes in the lower extremities other than the left ankle (Tr. 182). Dr. Gibbs then recommended surgery in light of lumbar MRI findings (Tr. 183). As such, the plaintiff underwent a second surgery on L5-S1 in April of 2003 (Tr. 177, 180).

During a postoperative visit on June 4, 2003, the plaintiff reported complete relief of leg pain and only occasional back pain (Tr. 178). During that same visit, the plaintiff indicated to Dr. Gibbs that he would like to go back to work if he could perform less strenuous tasks (Tr. 178). Then Dr. Gibbs instructed that the plaintiff may return to work for a six week reviewing period if his job could honor a 25 pound lifting restriction, with no repetitive bending, stooping, or twisting (Tr. 179). Approximately ten weeks later, on August 19, 2006, the plaintiff reported that, after an attempt to tune his car and six sessions of physical therapy, his back pain had returned and a new pain in his left calf had begun (Tr. 205). At that time, Dr. Gibbs authored a report indicating that the plaintiff was not to return to work (Tr. 208).

On January 5, 2004, the plaintiff complained to Dr. Gibbs of back pain and tingling in his toes (Tr. 201). Dr. Gibbs observed normal gait and station, no strength deficits in the lower extremities, no atrophy, normal sensation in the lower extremities, and reduced reflexes in the lower extremities (Tr. 201-202).

In March of 2004, the plaintiff underwent a vocational evaluation, in which the evaluator opined that, if the plaintiff's physical capacities were actually reduced, he would have to rely much more heavily upon his intellectual skills to make a successful return to competitive employment (Tr. 225).  The evaluator further reported that the plaintiff's had relatively low basic intellectual skills, which indicated a limited training potential (Tr. 225).

**Hearing Testimony**

The plaintiff and a Vocational Expert ("VE") testified at the hearing.  In response to questions posed by the ALJ, the plaintiff testified that he worked for about ten years assembling boats until 1989, when he took a job as a box maker (Tr. 287).  He further testified that being a box maker was heavy work, whereby he had to use his back, shoulders, and legs to help his coworkers push 40,000 pound rolls "into stands and thread them up." (Tr. 288-290).  Next, the plaintiff testified that he began work as a construction laborer from March of 1998 to October of 2002 (Tr. 290).  He testified that, as a laborer, he lifted sheet rock and worked with 90 pound jackhammers (Tr. 291).  He next testified that his back would not allow him to do such jobs anymore (Tr. 292).  When asked by the ALJ whether he had looked for work since October of 2002, the plaintiff testified that he had applied for jobs with a railroad, with a company providing security services, and with an automobile factory in Marion, Illinois (Tr. 292).

The ALJ then asked the plaintiff to describe his back pain, to which he testified that the pain started in the center of his lower back and shot down into his left lower extremity (Tr. 292).  He described the pain as a seven out of ten (ten being the most severe pain he had ever experienced), and as feeling like someone hit him with an electric shock (Tr. 293).  He testified further that the pain persisted throughout the day if he was not constantly sitting or laying down (Tr. 293).  He further stated that the pain went up to ten, and woke him every night after his pain

medication, Vicodin, wore off (Tr. 294). He testified that the Vicodin, which he took four to six times per day, made him sleepy (Tr. 294). The plaintiff then testified that his doctors had warned him not to do anything strenuous because that would "blow the disc again." (Tr. 294).

The plaintiff testified that he arose at 3:00 a.m. in the mornings after he went to bed at around 9:00 p.m. the night before (Tr. 301-302). He clarified that he never got a good night's sleep because he tossed and turned throughout the night and woke every half hour (Tr. 302). He described his typical day as watching television while laying on the couch, occasionally getting up to bathe and drink coffee (Tr. 302). He testified further that his sister brought him some meals, but, apart from that, he primarily cooked his meals in a microwave (Tr. 302-303). He testified that he showered and dressed himself without assistance from others, but that he needed help from others to change his sheets (Tr. 303). He testified that he could wash dishes, sweep and vacuum the floor if he moved very slowly, but that he relied on a neighborhood boy to take out the trash (Tr. 303). He further testified that his sister accompanied him when he went shopping, so that she could collect the items and meet him at the counter, where he made the payment (Tr. 304). He then testified that he no longer engaged in his past hobbies of fishing, hunting, swimming, and playing basketball (Tr. 304-305). The plaintiff next testified that he had been a recovering alcoholic since March of 1998 (Tr. 306). He testified that he walked two blocks to Alcoholics Anonymous ("AA") meetings three times a week (Tr. 306-307).

Next, the plaintiff testified that he could lift 20 to 30 pounds for 20 minutes out of 60 minutes (Tr. 307), and that he could lift 20 to 30 pounds occasionally (Tr. 308). The plaintiff testified that he could carry 20 to 30 pounds a distance of 10 feet (Tr. 308). The plaintiff then testified that he is typically worn out after walking the two blocks to his AA meetings (Tr. 308). He testified further that he would be able to stand for 15 to 20 minutes in an hour, and that he

could sit longer than he could stand (Tr. 309). In response to the ALJ's inquiry as to how the plaintiff felt after being seated there at the hearing for more than 20 minutes, the plaintiff testified that he felt "not that good." (Tr. 309). The plaintiff then testified that he layed down 5 to 10 times a day for 30 minutes each time (Tr. 309). He testified that he could not bend and touch his toes, that he must sit to tie his shoes, that he could not stoop, that he could not kneel, and that he sometimes crawled on his knees to try to get on his feet (Tr. 310). He testified during the hearing that he could not reach over his head with one of his shoulders because he had injured it when the hood of his car fell on it two months prior (Tr. 311). He further testified that he could grasp and hold objects with his fingers (Tr. 311). Next, he testified that rainy days trigger arthritis symptoms, for which he takes Celebrex or Vioxx (Tr. 312).

In response to questions from his attorney, the plaintiff testified that he does not lift things weighing more than 10 pounds, and that he could not lift 20 to 30 pounds a third of the time without injuring his back again (Tr. 313).

The VE testified that the plaintiff has a third grade reading level, and a full-scale IQ of 73 (Tr. 315). The VE then testified that the plaintiff's physical limitations and vocational profile would not allow him to perform his past work (Tr. 316). The VE further testified that the plaintiff would not be able to perform sedentary work because that would require him to sit and remain seated for at least 30 minutes at a time (Tr. 318). The VE then testified that the plaintiff would not be able to perform his past work if he could lift between 20 to 25 pounds, with no repetitive bending, stooping, or twisting (Tr. 319). The VE testified further that, if the plaintiff could not lift more than 20 pounds, he would be limited to a "light" exertional category (Tr. 320). Lastly, the VE testified that there are a significant number of "light" jobs in the Illinois economy that the plaintiff would be able to perform (Tr. 321-322).

**DISCUSSION**

**Legal Standard**

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive ..."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility") (quotation marks and citations omitted). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 101 (1938)). See also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. Golembiewski, 322 F.3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations mandate that the ALJ must apply a five-step sequential evaluation when determining whether a claimant has met the burden of establishing disability. See 20 C.F.R. § 416.920(a)(4); see also Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000) (enumerating the five steps of determining disability). In step one, the ALJ considers whether the claimant is presently employed or engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(I). If the claimant is engaged in such activity, he is not disabled and the evaluation process is over. Id. However, if the claimant is not so engaged, the ALJ proceeds to step two, in which the ALJ evaluates whether the claimant has a severe impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(a)(4)(ii); 416.920(c). If the ALJ finds a severe impairment, he turns to step three, in which the ALJ determines whether that severe impairment meets any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the severe impairment is listed in the regulations, the ALJ determines, in step four, the claimant's residual functional capacity (RFC), his past relevant work, and whether the claimant can do his past relevant work in light of his RFC. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can do his past relevant work, the ALJ must find that the claimant is not disabled. Id. If, however, the claimant cannot do his past relevant work, the ALJ must, in the fifth and final step, determine whether the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v); 42 U.S.C. § 423(d)(2).

**The ALJ's Decision**

In his decision of December 10, 2004, the ALJ found that: (1) the plaintiff met the insured status requirements of the Social Security Act on his onset date of October 25, 2002, and continued to meet the requirements through the date of the decision; (2) the plaintiff has not engaged ins substantial gainful activity since his alleged onset date; (3) the plaintiff had the medically determinable "severe" impairments of borderline intellectual functioning, verbal IQ of 76, performance IQ of 74, full-scale IQ of 73, degenerative disc disease with a history of L5-S1 discectomy and recurrent herniation of L5-S1, and status-post re-do left L5-S1 microdiscectomy; (4) the plaintiff's impairments did not meet the listing of impairments found in Appendix 1, Subpart P, Regulations No. 4; (5) the plaintiff's testimony concerning the severity and extent of his alleged physical limitations were not fully credible; (6) the plaintiff had the RFC to lift and/or carry 20-25 pounds, but could not engage in repetitive bending, stooping, or twisting; (7) the plaintiff was unable to perform any of his past relevant work due to his impairments; (8) the plaintiff was a younger individual between the ages of 45 and 49 with an 11th grade education, a semi-skilled background, and no transferable skills; (9) although the plaintiff could not perform the full range of light work, there were a significant number of jobs in the regional and national economy that he could perform; (10) the plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of the ALJ's decision; and (11) the plaintiff was not entitled to a period of disability, disability insurance benefits, and not eligible for supplemental security income payments under the Social Security Act (Tr. 22-23).

**Legal Analysis**

As stated above, step four of the five-step sequential evaluation requires the ALJ to determine whether the claimant can perform his past relevant work in light of his RFC.  20

C.F.R. § 416.920(a)(4)(iv). Plaintiff first argues that, in determining the plaintiff's RFC, the ALJ erred by assessing only two (lifting and carrying) of the seven physical strength demands (sitting, standing, walking, lifting, carrying, pushing and pulling) listed in 20 C.F.R. 404.1545 (Pl. Br. at 4-5). According to the plaintiff, Social Security Ruling 96-8p required the ALJ to perform a function-by-function analysis of "all of the seven strength demands" when determining RFC (Pl. Br. at 5) (emphasis added). In sum, the plaintiff argues that the ALJ's ultimate determination that the plaintiff can perform a wide range of light unskilled work did not properly evaluate all of the plaintiff's functional limitations as mandated by the Social Security regulations (Pl. Br. at 7). In general support of this argument, the plaintiff directs the Court's attention to Myers v. Apfel, 238 F.3d 617 (5th Cir. 2001) and Gotz v. Barnhart, 207 F. Supp.2d 886 (E.D. Wis., 2002). The plaintiff argues, secondarily, that the ALJ's decision is not supported by substantial evidence (Pl. Br. 8-11).

In response to the plaintiff's arguments, the defendant avers that a close reading of the ALJ's decision reveals that the ALJ "met his burden under SSR 96-8 and 20 C.F.R. § 404.1545," and that the ALJ's decision is supported by substantial evidence (Def. Br. at 9,10-14).

The Seventh Circuit Court of Appeals has held that Social Security Rulings "are intended not solely to be enlightening, but are binding on the Social Security Administration." Lauer v. Bowen, 818 F.2d 636, 639-640 (1987). Social Security Ruling 96-8p states in relevant part:

> "Ordinarily, an RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting ... The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."

10

SSR 96-8p(1).

Section 404.1545(b) of Title 20 of the Code of Federal Regulations states:

> "Physical abilities. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as *sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions* (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work."

20 C.F.R. § 404.1545 (emphasis added).

As the plaintiff aptly observes, and the defendant does not dispute, the language in SSR 96-8p unmistakably calls for an evaluation of the functions listed in 20 C.F.R. 404.1545(b) prior to the RFC " be[ing] expressed in terms of the exertional levels of work[.]" SSR 96-8p. Although the Seventh Circuit Court of Appeals has never specifically interpreted the portions of SSR 96-8p under review here, several other federal courts, including District Courts within the Seventh Circuit, have interpreted this ruling according to its plain language. See Gotz v. Barnhart, 207 F. Supp.2d 886 (E.D. Wis., 2002) (reversing and remanding a decision of the Social Security Administration when "the ALJ failed to engage in the 'function-by-function' assessment required by SSR 96-8p prior to expressing RFC in terms of an exertional category."); see also Rumphol v. Barnhart, 2003 WL 22424723, at *12 (N.D. Ill. October 22, 2003)(construing plainly the language in SSR 96-8p); Lee v. Barnhart, 2003 WL 260682, at *10 (N.D. Ill. February 6, 2003)(construing plainly the language in SSR 96-8p); Bladow v. Apfel, 205 F.3d 356, 360 (8th Cir. 2000); Myers v. Apfel, 238 F.3d 617 (5th Cir. 2001).

According to the plain language of SSR 96-8p, an ALJ's RFC assessment must consider the "functional limitations and restrictions that result from an individual's medically

11

determinable impairment or combination of impairments[.]" SSR 96-8p(2).  The ALJ found that the plaintiff had medically determinable severe impairments affecting his back, including degenerative disc disease with a history of discectomy and recurrerent herniation, and status-post re-do microdiscectomy (Tr. 22-23).  In light of the severe back impairments, the ALJ found that the plaintiff is capable of perform "a wide range of unskilled light work[.]" (Tr. 22).  Although the defendant argues that a close reading of the ALJ's decision will reveal that he indeed addressed the relevant exertional capacities before expressing the plaintiff's RFC in terms of exertional category, the defendant does not identify portions of the decision wherein the ALJ actually addressed the exertional demands of pushing and pulling.  Further, the Court's careful reading of the ALJ's decision contradicts the defendant's assertion that the ALJ assessed the impact of the plaintiff's back impairments upon his exertional capacities of pushing and pulling.  In fact, the ALJ's opinion does not mention whether the plaintiff's severe back impairments in any way limit his exertional capacities of pushing and pulling.  Because the law requires the ALJ to assess the seven exertional categories implicated by the plaintiff's medically determined back impairments before determining his exertional category, and because the ALJ only assessed some of those categories, the ALJ failed to follow Social Security regulations, thereby committing an error of law.  Id. ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis ... Only after that may RFC be expressed in terms of the exertional levels of work."); Lauer v. Bowen, 818 F.2d 636, 639-640 (1987) (holding that Social Security Administration rulings are "binding on the Social Security Administration[.]").  Likewise, because the ALJ did not address the plaintiff's ability to push and pull in light of his severe back

impairments, his decision lacks "an adequate discussion of the issues" and thus "cannot stand[.]" <u>Lopez ex. rel. Lopez v. Barnhart</u>, 336 F.3d 535, 539 (7th Cir. 2003).

Finally, the Court does not reach the question of whether the ALJ's decision is supported by substantial evidence in that the Court has already determined that the ALJ's decision lacks an adequate application of the five-step evaluation, which is the only lens through which the ALJ may evaluate the evidence of whether the plaintiff is disabled under the Social Security Act.

### CONCLUSION

For the foregoing reasons, the plaintiff's petition is hereby **GRANTED**, the final decision of the Commissioner of Social Security denying benefits is **REVERSED**, and this matter is **REMANDED** to the agency for further review consistent with this Order.

**DATED: September 29, 2006**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**
